UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARGARET B. FRASER and JOSEPH T. FRASER, *Plaintiffs*, v. WYETH, INC., and WYETH PHARMACEUTICALS INC., *Defendants*. | Civil No. 3:04cv1373 (JBA) August 5, 2013 |

**RULING ON PUNITIVE DAMAGES**

Following a three-and-a-half week jury trial, the jury returned a verdict in favor of Plaintiffs Margaret Fraser and Joseph Fraser, unanimously finding that the evidence at trial warranted an award of punitive damages.  Pending before the Court is the determination of the amount of punitive damages, if any, to which Plaintiffs are entitled pursuant to Conn. Gen. Stat. § 52-240b.[1]

I.     **Procedural Background**

In their Complaint, Plaintiffs claimed that through its manufacture and marketing of the hormone therapy medication Prempro, Wyeth violated the Connecticut Products Liability Act ("CPLA") through failure to warn, strict products liability, negligent failure to test, study or investigate, and negligent misrepresentation; breached implied and express warranties; violated the Connecticut Unfair Trade Practices Act ("CUTPA"); and was liable for Joseph Fraser's loss of consortium.  Wyeth moved for summary judgment,

---

[1] In their briefing on the issue of punitive damages, Plaintiffs raised the issue of their entitlement to pre-judgment interest.  However, the Court's opinion is limited to the issue of the amount of punitive damages to be awarded.  The issue of interest will be more appropriately addressed in a separate motion for pre- and post-judgment interest after final judgment has entered in this case.

which the Court granted in part and denied in part, dismissing Plaintiffs' breach of warranty and CUTPA claims, but leaving all other claims for adjudication.  *Fraser v. Wyeth*, 857 F. Supp. 2d 244 (D. Conn. 2012).

A verdict was reached on April 18, 2012, finding Wyeth liable on all of Plaintiffs' remaining claims—failure to provide adequate warnings, strict liability, negligent failure to test, study or investigate, and negligent misrepresentation—and awarded Ms. Fraser $3,750,000 in compensatory damages and Mr. Fraser $250,000 in loss of consortium damages.  (*See* Verdict Form [Doc. # 275].)  The jury also found that punitive damages should be awarded against Wyeth (*see id.*), the amount of which was to be determined by the Court, pursuant to state statute.  The parties submitted post-trial briefing regarding the appropriate interpretation of the punitive damages provision of the CPLA, Conn. Gen. Stat. § 52-240b, and the Court heard oral argument on this issue.  The parties have also submitted extensive additional briefing regarding the evidentiary and constitutional issues surrounding a punitive damages award in this case.

## II.    Discussion

Plaintiffs assert that, pursuant to § 52-240b, they are entitled to a punitive damages award of twice the amount of compensatory damages in this case, arguing that the Court should employ a multi-factor test in reaching this determination.  Defendants counter that § 52-240b incorporates the common law rule that punitive damages are capped at attorney's fees and costs; that Plaintiffs have waived their right to recover punitive damages in the amount of attorney's fees and costs; that Plaintiffs have not submitted sufficient evidence to support their claim for attorney's fees and costs; that

there is insufficient evidence to support an award of punitive damages; and that even if such award were supported by the evidence; the constitutional requirements of due process dictate that an award of $0 punitive damages be entered.[2]

## A.      Conn. Gen. Stat. § 52-240b

In this diversity action, Connecticut law governs the Court's fashioning of a punitive damages award.  *See Browning-Ferris Indus. of Vt. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989) ("[T]he factors the [fact-finder] may consider in determining the[] amount [of punitive damages], are questions of state law.").  Under the CPLA, a plaintiff may recover punitive damages "if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers, or others who were injured by the product." Conn. Gen. Stat.  § 52-240b.   The CPLA also sets out the procedure for awarding punitive damages:  "If the trier of fact determines that punitive damages should be awarded, the court shall determine the amount of such damages not to exceed an amount equal to twice the damages awarded to the plaintiff." *Id.*  Plaintiffs maintain that under the clear terms of this statute, and in light of the facts of this case, they are entitled to a punitive damages award of double the compensatory damages awarded in this case, i.e., $8,000,000.

---

[2] Defendants also raise their argument regarding the sufficiency of the evidence to support an award of punitive damages in their briefing on their prior motion for judgment as a matter of law, and this issue will be more appropriately addressed when that motion is renewed.   Under Conn. Gen. Stat. § 52-240b, once a jury has determined that punitive damages should be awarded, "the court *shall* determine the amount of such damages." (emphasis added).   Therefore, pursuant to state law, the Court must first determine the amount of punitive damages to be awarded and enter a final judgment in the case.  Once that determination has been made, Defendants are free to attack the jury's finding that punitive damages were merited along with the other aspects of the verdict to which they object.

However, Connecticut has long recognized the common law rule that "punitive damages serve primarily to compensate the plaintiff for his injuries and, thus, are properly limited to the plaintiff's litigation expenses less taxable costs." *Berry v. Loiseau*, 223 Conn. 786, 827 (1992).  Defendants argue that § 52-240b incorporates this common law rule, and that Plaintiffs' punitive damages should therefore be capped at their reasonable litigation expenses.   The CPLA itself is silent as to whether § 52-240b abrogated or subsumed Connecticut's common law limitation on punitive damages.   To date, no Connecticut appellate court has addressed this issue, and several Connecticut Superior Court decisions have reached opposite conclusions on the matter.  *Compare Roome v. Shop-Rite Supermarkets, Inc.*, No. 020281250, 2006 WL 2556572, at *4–5 (Conn. Super. Ct. Aug. 16, 2006) (awarding attorney's fees in addition to punitive damages), *with R.I. Pools, Inc. v. Paramount Concrete, Inc.*, No. X05FSTCV095011707S, 2011 WL 6934779, at *8–9 (Conn. Super. Ct. Dec. 5, 2011) ("[T]he punitive damage award in this case should cover the costs of litigation less taxable costs."); *Russo v. Conair Corp.*, No. CV030483600, 2004 WL 1730136, at *5 (Conn. Super. Ct. June 30, 2004) ("The Connecticut courts have . . . consistently limited punitive or exemplary damage awards in Connecticut to costs in excess of taxable costs.").   In the absence of binding state authority, the Court must "carefully predict how [the Connecticut Supreme Court] would resolve [this issue]." *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 82 (2d Cir. 1995).

Under Connecticut law, "[i]n determining whether or not a statute abrogates or modifies a common law rule the construction must be strict . . . .   We recognize only those alterations of the common law that are clearly expressed in the language of the statute." *Lynn v. Haybuster Mfg., Inc.*, 226 Conn. 282, 290 (1993).  Thus, the Court must

strictly construe § 52-240b, and may only find that it abrogates the common law limitation on punitive damages if such abrogation is clearly expressed in the language of the statute.   In reaching this determination, the Court is guided by Judge Underhill's recent analysis of § 52-240b in *Izzarelli v. R.J. Reynolds Tobacco Co.*, 767 F. Supp. 2d 324 (D. Conn. 2010), *on appeal at* No. 11-3865 (2d Cir. 2011).   In *Izzarelli*, Judge Underhill examined the language and legislative history of § 52-240b and concluded that the statute did not abrogate the common law cap on punitive damages.   Judge Underhill based this conclusion on the fact that the legislature had rejected proposed legislation that would have awarded punitive damages "in addition to attorney's fees" and laid out a multi-factor test for calculating punitive damages.  *See id.* at 328–29.  Judge Underhill also concluded that the common law limitation on punitive damages was consistent with the make-whole legislative purpose of the CPLA to limit punitive damages awards in product liability actions.  *See id.* at 331.

Plaintiffs urge the Court to reject the holding in *Izzarelli* on the basis that the language in § 52-240b capping punitive damages at twice compensatory damages evinces a clear intent by the legislature to abrogate the previous common law cap.   However, the Court is persuaded by Judge Underhill's reasoned analysis in *Izzarelli*.   Section 52-240b's statutory cap on punitive damages would only conflict with the common law cap in the rare cases where plaintiffs incur significant litigation expenses to recover nominal damages.   As such, the statutory cap "is wholly consistent with the purpose of the [CPLA]," *id.* at 329, and its language alone fails to demonstrate a clear intent to abrogate the common law rule.  *See id.* at 332 ("Only in cases with minimal injuries will the statutory cap on punitive damages conflict with the common law doctrine of punitive damages, which seeks to make a successful plaintiff whole.  I therefore conclude that the

5

legislature did not abrogate the common-law measure of punitive damages by enacting section 52-240b."); *see also R.I. Pools*, 2011 WL 693779, at *9 ("The federal court in *Izzarelli* . . . declined to expand punitive damage awards under the [CPLA] beyond that provided by common law.  This court finds its rationale sound, and in the absence of any state appellate authority construing the [CPLA] to the contrary, holds that the punitive damage award in this case should cover the costs of litigation less taxable costs.").

Plaintiffs also argue that if § 52-240b incorporates the common law method of calculating damages, "Connecticut's constitutional mandate favoring trial by jury is circumvented."  (Pls.' Reply on Punitive Damages [Doc. # 302] at 6.)  However, a similar claim was raised and rejected in *Izzarelli*.  *See Izzarelli*, 767 F. Supp. 2d at 330 ("I find no support for the assertion that, under the common-law rule, a party was entitled to a jury determination of the cost of litigation.").  *Cf. Berry*, 223 Conn. at 827–29 (declining to consider plaintiff's argument that he had a constitutional right to have a jury determine the amount of punitive damages under the common law rule).

Finally, Plaintiffs urge this Court to look to CUTPA and the Connecticut Uniform Trade Secrets Act ("CUTSA") in interpreting § 52-240b in order to conclude that the CPLA does not cap punitive damages at litigation expenses less taxable costs.  A similar argument was also rejected in *Izzarelli*.  *See* 767 F. Supp. 2d at 332.  Both CUTPA and CUTSA provide for an award of punitive damages *in addition to* an award of attorney's fees.  *See* CUTPA, Conn. Gen. Stat. § 42-110g ("The court may, in its discretion, award punitive damages . . . . to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees . . . ."); CUTSA, Conn. Gen. Stat. § 35-53(b) ("[T]he court may award punitive damages in an amount not exceeding twice any award made under subsection (a) and may award reasonable attorney's fees to the prevailing party.").

6

By contrast, the legislature declined to adopt similar language when enacting the CPLA, and the CPLA only provides for attorney's fees in the event of a frivolous claim or defense. *See* Conn. Gen. Stat. § 42-240a ("If the court determines that the claim or defense is frivolous, the court may award reasonable attorney's fees to the prevailing party in a products liability action."). As a result of these differences, the Court does not find a comparison to CUTPA or CUTSA instructive when construing the CPLA.

Therefore, the Court concludes that the CPLA incorporates the common law cap on punitive damages, and Plaintiffs are thus entitled to a punitive damages award of no more than their litigation expenses less taxable costs in this action.

**B.      Litigation Expenses**

In their post-trial briefing, Plaintiffs argue that should the Court determine that the common law cap on punitive damages applies to punitive damages awarded under § 52-240b, they are entitled to a total award of $2,598,658.97 representing attorney's fees pursuant to the terms of their contingency fee agreement and the costs incurred during the course of the litigation. Defendants argue that Plaintiffs waived their right to punitive damages because they failed to submit evidence of their litigation expenses in the first round of post-trial briefing on punitive damages; that Plaintiffs cannot collect attorney's fees because their contingency fee agreement is void; and that Plaintiffs' evidence in support of their costs is insufficient to support an award. The Court will address each of these arguments in turn.

*1.      Waiver*

In the parties' initial round of briefing on the issue of punitive damages, Plaintiffs maintained that they were entitled to an award equal to twice the amount of the compensatory damages, and failed to provide evidence of their litigation costs in the

event that the Court determined that the common law cap on punitive damages governed punitive damages awarded under § 52-240b.   However, Plaintiffs requested an opportunity to supply evidence of their expenses (*see* Pls.' Reply on Punitive Damages at 1), and in a subsequent round of briefing, provided such evidence, including declarations by Margaret Fraser, Neal Moskow, and Gregory Bubalo, copies of Plaintiffs' contingency fee agreements, and itemized lists of the costs incurred during litigation.  (*See* Fraser Decl. [Doc. # 315-2]; 2004 Contingency Fee Agreement, Ex. A to Fraser Decl; 2013 Contingency Fee Agreement, Ex. B to Fraser Decl.; Moskow Decl. [Doc. # 315-3]; Ury & Moskow, LLC Costs, Ex. C to Moskow Decl; Bubalo Decl. [Doc. # 315-4]; The Bubalo Firm Costs, Ex. A to Bubalo Decl.)

Defendants argue that by failing to provide evidentiary support for their claimed litigation expenses in their initial brief, Plaintiffs waived their opportunity to submit such evidence, and that such waiver cannot be cured by their untimely submission of supporting documentation in conjunction with a later round of briefing.  However, the cases cited by Defendants in support of this argument stand for the proposition that issues may not properly be raised for the first time in a reply brief.  For example, in *United States ex rel. Karlin v. Noble Jewelry Holdings, Ltd.*, No. 08 Civ. 7826 (JGK)(KNF), 2012 WL 1228199, at *4–6 (S.D.N.Y. Apr. 9, 2012), the court held in a recommended ruling that the relator's motion for attorney's fees should be denied *without prejudice* where contemporaneous billing records were first submitted attached to a reply brief, because the opposing party lacked the opportunity to challenge such records in opposing the motion.  *See id.* at *5 ("However it is improper for the Court to consider the Relator's evidence, including contemporaneous records, submitted for the first time in reply,

because that evidence was not submitted in response to any new material issues raised by the defendants in their opposition brief.")

Here, however, Plaintiffs submitted their evidentiary support in connection with their motion for final judgment [Doc. # 315-1], and Defendants were given an opportunity to respond to this evidence.  Furthermore, in *Karlin*, the court simply recommended that the motion for fees be denied without prejudice to renew, such that the opposing party would be afforded an opportunity to respond to the relator's evidence. Moreover, Plaintiffs requested the right to provide evidentiary support of their litigation expenses, which is incompatible with a finding of waiver.  *See Worth Cons. Co. v. Dep't of Public Works*, 139 Conn. App. 65, 71 (2012) ("[T]o determine the presence of waiver, there must be evidence of intelligent and intentional action by the petitioner of the right claimed to be waived." (internal quotation marks and citations omitted)).  Therefore, the Court finds that Plaintiffs have not waived their right to provide evidentiary support of their litigation expenses, and the Court will consider the records provided by Plaintiff in fashioning a punitive damages award.

> 2.      *Contingency Fee Agreement*

"[F]or an award of punitive damages, it is essential that evidence of the cost of the litigation of the case being tried must be offered."  *Berry*, 223 Conn. at 832–33. "[Connecticut] case law, however, does not specify the type of evidence required to support an award of punitive damages. . . . [and a] court [may] consider any evidence the plaintiff submits" regarding his litigation expenses in fashioning a punitive damages award.  *Id.* at 833.  "[The Connecticut Supreme Court] ha[s] long held that in a claim for damages proof of the expenses paid or incurred affords some evidence of the value of the services, and if unreasonableness in amount does not appear from other evidence or

through application of the trier's general knowledge of the subject matter, its reasonableness will be presumed." *Label Systems Corp. v. Aghamohammadi*, 270 Conn. 291, 335–36 (2004).

Plaintiffs have submitted their contingency fee agreement, which provides for a one-third contingency fee[3] in the event that Plaintiffs' recover a judgment, and an additional 16.667% fee in the event that such judgment is appealed and plaintiffs' counsel agree to defend the appeal (*see* 2013 Contingency Fee Agreement at 2, 4), as evidence of their litigation expenses related to reasonable attorney's fees. The Connecticut Supreme Court has frequently upheld punitive damage awards computed on the basis of contingency fee agreements. *See Berry*, 223 Conn. at 831 (collecting cases). However, Defendants argue that the contingency fee agreement is void as a matter of public policy pursuant to Conn. Gen. Stat. § 52-251c, which sets a statutory cap on contingency fees in personal injury actions, and as such, Plaintiffs may not rely on it in support of their claim for litigation expenses, because it is not indicative of the amount of attorney's fees Plaintiffs might actually be required to pay.

Plaintiffs counter that Defendants lack standing to contest the validity of the contingency fee agreement, suggesting that to do so could constitute tortious interference with contract. "It is well settled that one who is neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract." *Tomlinson v. Bd. of Educ. of City of Bristol*, 226 Conn. 704, 718 (1993) (internal quotation marks and citations omitted). In *Dur-a-Flex, Inc. v. Laticrete Intern, Inc.*, No.

---

[3] The original contingency fee provided for a 40% fee, but this amount was reduced to 30% in a subsequent agreement in light of the amendment to Conn. Gen. Stat. § 52-521c, which provided that while a party could waive the statutory cap on contingency fees under Connecticut law, in no event could such a fee exceed 33.33%. *See* Conn. Gen. Stat. § 52-521c(f).

CV065014930S, 2010 WL 2822742 (Conn. Super. Ct. June 21, 2010), the Superior Court of Connecticut held that the defendant lacked standing to challenge the validity of the plaintiff's contingency fee agreement when disputing an award for attorney's fees.    In *Dur-a-Flex*, the defendant argued that the plaintiff's contingency fee award was invalid pursuant to Rule of Professional Conduct Section 1.5(c), because the agreement was not in writing.  The court held that the absence of a writing "does not afford Defendant the opportunity to use said absence as a sword to reduce a reasonable attorneys fees award. Defendant has no standing to challenge the nature of the agreement between the Plaintiff and its attorney.  The question is one of reasonableness."  *Id.* at *6.  In so holding, the court relied on the Connecticut Supreme Court decision in *Mozzochi v. Beck*, 204 Conn. 490, 500 (1987), which held that an opposing party in litigation lacks standing to sue the attorney of its opponent based on violations of the Rules of Professional Conduct.  Thus, the *Dur-a-Flex* court rejected the defendant's claim and considered the contingency fee agreement in fashioning a reasonable fee award despite questions regarding its validity. *Id.* at 7.  Based on the reasoning in *Dur-a-Flex*, the Court concludes that Defendants lack standing to challenge the validity of Plaintiff's contingency fee award in the context of the determination of the amount of punitive damages to be awarded.[4]    Furthermore, the

---

[4] Furthermore, Defendants' reliance on *Parnoff v. Yuille*, 340 Conn. App. 147 (2012) to challenge the validity of the contingency fee agreement is misplaced.  In *Parnoff*, the Connecticut Appellate Court determined that a contingency fee agreement that called for a forty percent fee violated § 52-251c, and held that an attorney could not bring a cause of action for breach of contract under such an agreement even where damages were limited to the statutory cap.  *Id.* at 169–70.  However, in *Parnoff*, the jury determined that the client had not waived the requirements of § 52-251c in the original fee agreement.  At the time Plaintiffs' original contingency fee agreement, which called for a 40% contingency fee plus a 16.667% in the event of an appeal, was signed, an individual could waive the statutory cap.  *See In re Estate of Salerno*, 42 Conn. Supp. 526, 534 (Super. Ct. 1993) ("The benefits of § 52-251c can be waived.").  Defendants point to no case law

Connecticut Supreme Court has recognized that the terms of § 52-521c do not "govern a trial court's discretion in assessing the amount of punitive damages to be awarded to a party who has a contingency fee agreement with his attorney." *Berry*, 223 Conn. at 831. Thus, the Court will consider the contingency fee in setting the amount of punitive damages to be awarded.

"[W]hen a contingency fee agreement exists, a two step analysis is required to determine whether a trial court permissibly may depart from the fee agreement in awarding a reasonable fee as punitive damages." *Welsh v. Martinez*, No. HHDCV106012959, 2012 WL 6743586, at *1 (Conn. Super. Ct. Dec. 5, 2012) (citing *Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 270 (2003)).   The Connecticut Supreme Court explained this analysis as follows:

> If the agreement is, by its terms, reasonable, the trial court may depart from its terms only when necessary to prevent "substantial unfairness" to the party, typically a defendant, who bears the ultimate responsibility for payment of the fee.  By contrast, if the trial court concludes that the agreement is, by its terms, unreasonable, it may exercise its discretion and award a reasonable fee in accordance with the factors enumerated in rule 1.5(a) of the Rules of Professional Conduct.

*Schoonmaker*, 265 Conn. at 270–71 (internal quotation marks and citations omitted). "The [Connecticut] Supreme Court has also stated that 'the reasonableness of the contingent fee percentage itself may also be influenced by the statutory requirements,' referencing § 52–251c as support for this statement." *Welsh*, 2012 WL 6743586, at *1 (citing *Schoonmaker*, 265 Conn. at 270–72.)  Here, the Court concludes that Plaintiffs' contingency fee agreement providing for a 33.33% contingency fee is reasonable, in light

---

showing that the ability to waive the statutory cap was limited prior to the amendment to § 52-521c prohibiting the waiver of a fee greater than 33.33%.  Thus, while the validity of the 2013 contingency fee agreement remains an open question, it appears that the 2004 contingency fee agreement would have been valid when it was signed.

of Conn. Gen. Stat. § 52-251c(f), which states that a contingency fee of 33.33% is the maximum fee to which an individual may agree when executing a waiver under that provision.  The Court finds no reason to depart from this fee on the basis of substantial unfairness.

Plaintiffs contend that they are entitled to an additional award of appellate fees in the amount of 16.667% pursuant to their contingency fee agreement.  Under Connecticut law, appellate fees may only be recovered if they are authorized by contract or by statute, and "[t]he decision whether to award such fees rests in the exercise of discretion by the trial court." *Premier Capital, Inc. v. Grossman*, 92 Conn. App. 652, 658–59 (2005).  While Defendants lack standing to challenge the validity of Plaintiff's contingency fee award, the Court has serious concerns regarding the propriety of a fee agreement providing for an additional 16.667% appellate fee on top of the 33.33% fee of $1,333,333.33, especially in light of the legislature's clear instruction in Conn. Gen. Stat. § 52-251c that fees greater than 33.33% are contrary to the public policy of this state.  Therefore, the Court declines to exercise its discretion to award punitive damages in excess of the 33.33% fee in Plaintiffs' contingency fee agreement.

   3.   Costs

"Litigation expenses may include not only reasonable attorney's fees, but also any other nontaxable disbursements reasonably necessary to prosecuting the action." *Berry*, 223 Conn. at 832.  In support of their litigation costs, Plaintiffs have submitted the declarations of attorneys Neal Moskow and Gregory Bubalo, in addition to itemized cost sheets listing the costs incurred by each firm related to this case.  Defendants argue that this documentation is insufficient to show that any of the claimed costs were related to or necessary for the litigation.  Specifically, Defendants argue (1) that Mr. Moskow's trip to

Chicago to observe an ongoing HRT trial was unrelated to this action; (2) the ledger includes unexplained payments to American Express, Hatch, LLC, Fogut Consulting, and Jury Watch; (3) the ledger contains duplicative copying, research and postage charges by both firms representing Plaintiffs; (4) Plaintiffs' costs for fees paid to attorneys, witnesses, and Margaret Fraser herself for travel expenses were not necessary to the litigation; (5) Dr. Cheryl Blume's fee is not reasonably related to this case because she gave non-case specific testimony at trial; and (6) Plaintiffs have included taxable costs, such as filing fees, marshal fees and expert medical witness fees, which are not recoverable as punitive damages.

Connecticut courts do not require specific documentation of costs and fees in order to award punitive damages based on litigation expenses, and the court may consider any evidence Plaintiffs offer for the purpose of calculating the costs related to this litigation. *Berry*, 223 Conn. at 833. Thus, the Court will consider the itemized ledger submitted by plaintiffs' counsel, in conjunction with the Moskow and Bubalo declarations representing that these fees were related to the instant action, as evidence of the costs incurred by Plaintiffs. Furthermore, the Court is well aware that the litigation of this case has been an extremely contentious process drawn out over the course of nearly a decade, during which countless hours, gallons of ink, and forests of trees have already been expended in pursuit of the resolution of the legal issues and the trial verdict. Therefore, despite the high costs claimed by Plaintiffs, this amount does not strike the Court as inherently unreasonable in the context of this action.

However, courts in this state will not award costs where these costs are not supported by evidence tending to show that they are reasonable and related to the action under consideration. *See, e.g.*, *Gerner v. Applied Industrial Materials*, No. X08-CV-02-

14

0192069-S, 2005 WL 1805670, at *10 (Conn. Super. Ct. June 30, 2005) (declining to award costs for "an unexplained 'adjustment' of $4,820.59"); *Gorfien v. Logan*, No. 279006, 1990 WL 283697, at *1 (Conn. Super. Ct. Sept. 17, 1990) (declining to award costs where there was "nothing before the court which would enable the court to determine whether the claimed $3,392.41 [wa]s in fact a reasonable charge limited to" the preparation of evidence deemed admissible at trial). As Defendants correctly point out, many of the entries in Plaintiff's cost ledger are vague and not self-evidently related to this litigation. For example, the costs attached to the Bubalo Declaration include $15,361.41 in unidentified American Express charges. (*See* The Bubalo Firm Costs.) Furthermore, the costs attached to the Moskow Declaration include $1,165.95 in charges related to travel to Chicago to observe another HRT trial. (*See* Ury & Moskow, LLC Costs.) While Attorney Moskow argues that his trip was helpful in preparing for this trial, the Court fails to see how such costs were vital for the litigation of this action. Therefore, the Court will exclude the American Express charges and the Chicago travel costs from the punitive damages award.

Defendants are also correct that Plaintiffs may not recover taxable costs as a part of a punitive damages award. *See Waterbury Petroleum Products*, 193 Conn. 208, 234–35 (1984) (reaffirming rule that the common law limits punitive damages to the expense of litigation *less taxable costs*). Pursuant to District of Connecticut Local Rule 54, the fees of the clerk and marshal, the fees of the court reporter related to one original and one copy of trial transcripts, and witness fees, including expert witness fees not in excess of statutory limits are all taxable. However, Plaintiffs' ledger of costs include filing fees, marshal fees, court reporter fees, and witness fees without clearly delineating between taxable and non-taxable costs. To remedy this inattention, the Court will reduce the

remaining claimed costs by twenty-five percent in calculating the punitive damages award.

## C.      Amount of Award

"If awarded, punitive damages are limited to the costs of litigation less taxable costs, but, within that limitation, the extent to which they are awarded is in the sole discretion of the trier." *Label Systems Corp.*, 270 Conn. at 335.  Defendants urge this Court to exercise its discretion in this respect and award $0 punitive damages, regardless of the amount of litigation expenses Plaintiffs incurred in this suit.  However, by capping punitive damages at the amount of litigation expenses less taxable costs, the ostensible purpose of the common law rule of punitive damages is to make a plaintiff whole.  *See Izzarelli*, 767 F. Supp. 2d at 332.  The Court therefore concludes that an award equal to the full amount of permissible attorney's fees and costs proved by Plaintiffs is appropriate in this action, as it is sufficient, but not greater than necessary, to achieve this purpose.

Plaintiffs also assert that they will be responsible for paying a common benefit cost assessment equal to five percent of their gross recovery to the Plaintiffs Steering Committee of the In Re:  Prempro MDL.  (*See* Moskow Decl. ¶ 12.)  Plaintiffs argue that in order to be made whole by a punitive damages award, Defendants should be ordered to pay punitive damages in the amount of their attorney's fees and costs, in addition to the entire amount of the common benefit assessment.  Defendants argue that because the common benefit assessment was not included in the original 2004 contingency fee agreement, and because it would increase the fee paid by Plaintiffs above the 33.33% statutory cap, such fee is invalid.  As discussed above, Defendants lack the standing to challenge the propriety of such a fee under the Rules of Professional Conduct or § 52-251c.  However, Defendants also argue that the common benefit assessment, which would

be paid to a trust fund, the disposition of which is as of yet unknown, does not resemble the type of reasonable costs and fees typically recognized as litigation expenses in punitive damages awards in this state.  Plaintiffs point to no case law in which a similar cost was included in a punitive damages award based on litigation expenses, and thus the Court will not include the common benefit assessment in its punitive damages award.

Therefore, the Court awards punitive damages in the following amount:

- $1,333,333.33 in attorney's fees, representing a 33.33% fee based on the $4,000,000 award of compensatory damages, pursuant to Plaintiffs' contingency fee agreement;

- $18,997.61 in costs for Ury & Moskow (reflecting the exclusion of the $1,165.95 in costs for travel to Chicago, and the 25% reduction discussed above); and

- $417,601.10 in costs for The Bubalo Firm (reflecting the exclusion of the $15,361.41 in American Express charges, and the 25% reduction discussed above).

This reflects a total award of punitive damages in the amount of $1,769,932.04.

Defendants argue that even a minimal punitive damages award would violate their constitutional due process rights, would be excessive as a matter of Connecticut law, is precluded by Defendants' exposure to other punitive damages awards, and is not supported by the evidence.[5]  In *Izzarelli*, the district court held that "[b]ecause punitive damages are set at plaintiff's cost of litigation, many of [the defendant's] arguments

---

[5] Defendants also argue in their briefing that their purported "substantial wealth" is irrelevant to the issue of punitive damages.  Because punitive damages were calculated based on Plaintiff's litigation expenses, without reference to Defendants' net worth, the Court need not address this argument.

17

concerning its good conduct and due process rights are moot."  767 F. Supp. 2d at 334. *Izzarelli* went on to note that an award of litigation costs imposed under the Connecticut common law limitation of punitive damages comported with the requirements of due process based on the factors laid out by the Supreme Court in *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *BMW of North America v. Gore*, 517 U.S. 559 (1996), because there, as here, such an award was directly related to the harm suffered by the plaintiff, in that it sought to make her whole by shifting the cost of pursuing the litigation to the defendant, and because the punitive damages award was less than half the compensatory damages award, which was well within the outer limit on the damages ratio established by the Supreme Court.   *Id.*   However, to the extent that any of Defendants' due process arguments survive, they have also been raised in the post-trial briefing of Defendants' motion for judgment as a matter of law, and the Court will address those arguments in connection with its ruling on that motion.

III.    **Conclusion**

For the foregoing reasons, the Court concludes that Plaintiffs are entitled to punitive damages in the amount of $1,769,932.04.  The clerk is directed to amend the judgment to reflect this award.

Pursuant to the schedule agreed to at the parties' May 2, 2013 status conference, renewed motions for judgment as a matter of law and for a new trial are due ten days from the issuance of this ruling.  The Court will rely on the parties' previous post-trial briefing in considering those motions, and the parties are reminded not to submit duplicative materials to the Court.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 5th day of August, 2013.